Good morning. May it please the Court, my name is Lara Vennard and I represent the appellant Alfredo Virgen-Zarate. I'd like to reserve two minutes for rebuttal and I intend to address the government's 28-J letter at the conclusion of my argument. The government flatly asserts that different provisions of the sentencing guidelines are not subject to equal protection review when the defendants have committed different crimes. There are several sources of authority that refute the government's claim. First, of course, the government cites no authority for that position. The primary authority on our side is common sense, because if the government were correct, there would be no way for the courts to review and conduct a comparative analysis of different sentencing guidelines. Counsel, what do we do in light of Booker? The sentencing guidelines are advisory. Well, the court first has to conduct, the district court first has to conduct a guidelines calculation. The court has to decide what the applicable guideline range is under a correctly calculated guideline review. That includes a determination of what the criminal history category is. It includes a determination of the base defense level. And it includes any enhancements based on aggravating factors. The defense then has the opportunity to seek departures. As a separate approach to a reduced sentence, the defense can then ask for a reduced sentence under Booker and the factors set forth in 3553. And the government has the opportunity of seeking to enhance the sentence. So it's adjustable up or down. So there are two. Actually, we can jump now to the government's citation to a mix, which is this Court's most recent statement on the interplay between the 3553 factors and the guideline calculation. The district court conducts two analyses. The court figures out what the guideline calculation is, and then the court looks to the 3553 factors. Now, let me just jump ahead as well. We believe that mix is not applicable to either of the arguments that we've raised to the extent that the government relies on mix to say that a sentence within the correctly calculated guideline range is reasonable. Now, first, mix does not state that. I think it will be reserved for a later case whether that's the holding of mix. But second, we have two challenges here that are not susceptible to reasonableness review. The first challenge is a constitutional challenge to the application of an enhancement that has a radically disparate impact under one guideline as compared to another. The second challenge in my brief is the district court's failure to depart for lost opportunity to serve concurrent sentences. Is this similar to the argument that was raised several years ago about the crack cocaine and the standard cocaine? The equal protection argument is similar. And that's another aspect of my argument, that the guidelines are subject to equal protection review. And what is – how do you review that? Is it a rational basis for a distinction between the two, or what do you do? It is a rational basis review. The government – there needs to be a legitimate basis for the distinction that's been drawn. Now, what's interesting in this case, there is the specter of the fact that the defendants under the more harsh guideline are undocumented aliens. What we know from Plyler v. Doe is that undocumented aliens are not a suspect class. However, I think it's important to be cautious of relying overly on their status as undocumented aliens to conclude that they can be subjected to enhanced sentences purely for that reason as a way to deter them from returning to the United States. The bulk of the government's argument is directed toward that point. Well, that – well, the fact that they are undocumented aliens, of course, is not a status that we now recognize, and thus they may be punished for that status. That is, for the status of being undocumented aliens. And then it should be up to Congress to determine what the punishment that attaches to that status should be. Correct. And then it should be up to the court to determine whether disparities between guidelines, where the identical factor is being used, result in an argument. But we don't have an identical factor. You have – in one case you have undocumented aliens, in another case you don't. So we have a status that is capable of punishment by virtue of its status alone. Well, let me advance to the other point that I wanted to make regarding the sources of authority for my belief that these defendants are similarly situated under the two separate guidelines. First, I think it's important to keep in mind that the sentencing guidelines are a recidivist sentencing scheme. The guidelines already treat all criminal defendants as being similarly situated for purposes of determining, for example, their criminal history category. It would not be appropriate for undocumented aliens to get six points for a certain kind of prior conviction under the criminal history calculation, where other defendants only get three points for the same prior conviction. Are you saying Congress couldn't make that decision? I think that the equal protection violation would be more apparent if that's what we were dealing with here. I'm speaking about the horizontal axis of the criminal history table, of the sentencing table and the criminal history calculation. If one class of defendants were singled out to have their criminal history points doubled for the identical conviction, I think the disparity would be obvious, and I think it would be clear that Well, except counsel that you've just admitted that undocumented aliens is not a protected status. That's correct. In fact, it is a punishable status. That's correct. So there needs to be a legitimate basis for the distinction. Well, no, that is the distinction itself, isn't it? No, I don't believe so, Your Honor, because I think there's a second aspect of the guidelines that tells us that these defendants are similarly situated in relevant respects. And that is, if you look at the base offense level that is assigned to these two separate crimes, the guidelines have assessed a similar severity to these two crimes. The base offense level for 1326 is 8, or it goes up to 12 if the defendant has a generic prior felony. The base offense level for a prohibited person under 922G is 14. So, in fact, we see that an alien with a prior felony is treated slightly less seriously than a felon with a prior felony. Then we come to the enhancements that are added in under the two guidelines, and that's where the disparity kicks in. The factor is the same for the enhancement in each case, a prior felony conviction that is either a crime of violence or a drug trafficking offense. However, it has two to three times the severity in the case of the illegal aliens than it does with respect to the gun offenses. And there's no justification in the notes following the guideline. There is no justification from the Sentencing Commission for this disparity. Yes, I'd like to take you back to a question I asked you, because I don't feel like I got an answer to my question, which is what do we do with the fact that the guidelines are now advisory? I understand the argument that you would make in a scheme when the guidelines were mandatory. But now that they are advisory and judges may depart upward or downward, then don't you have to do a – don't you have to offer somebody else who got a different sentence than your client rather than just simply pointing to the guidelines? The district court here departed from the guidelines, right? I want to go back to the guidelines analysis and determine that under the guidelines, the criminal history was overrepresented. Right. Your client got a downward departure here, correct? But you're still claiming that he got more of a sentence, that he's going to be unequal as compared to somebody else. Now, who do we compare him with? The comparison is to the other guideline that I've cited, which is the – But why would you cite to a guideline that's not mandatory? It's not binding. Why don't you have to point out – why don't you have to give us the name of somebody who got a less severe sentence than your client? The district court is obligated to conduct that guideline calculation. At this point, the district court has to apply the – He did the calculation, then he downward departed for your client. Your client got a favorable bounce out of this. Well, he down departed on a different ground. He denied my motion to find that there was an equal protection violation. This was a pretrial motion that I raised that he rejected. I preserved it at our sentencing hearing to say that the court should not impose a full 16-level enhancement because there's an equal protection violation. The court, again, ruled against me, and the departure was on a different axis on the criminal history aspect. Mr. Counsel, do we have jurisdiction to review the district court's declination to depart further? That's with respect to my second argument, which I'll briefly address. Here again, the argument is not that the sentence was unreasonable on its face. The argument is that it was unreasonable because the court relied on an incorrect legal determination. This is respect to the issue of – Even so, if it's done in the context of considering a downward departure, we can't review that, can we? I believe the court can if there's a legal error. And here again, Mix has a footnote. This is the case cited by the government. Mix has a footnote that the guideline calculation is still reviewed for legal error. But this isn't a – we've gone beyond the guideline calculation at that point in determining whether or not to depart from that calculation is a different consideration. What case authority are you relying upon to say that we now have the authority to review a denial of a departure request? Your Honor, I believe that would be Mix, where we're talking about a legal error. And here, the court did not recognize or acknowledge the authority of Sanchez-Rodriguez. The court's sole reason for not granting a departure for lost opportunity for concurrent time was that the prior State offense was imposed for a different charge. It was a failure to register, where here we have a 1326 violation. I thought our authority to consider the denial of a downward departure was strictly limited to the situation where the court didn't realize it had authority to depart. And I think that is the case here, Your Honor. The court stated, it doesn't seem to me that given the separate nature of the State offense that that should be a basis to depart. So the court indicated that because the sentences were for different crimes, it could not go below the guideline range. And that conflicts with Sanchez-Rodriguez, because in that case as well, the defendant had a prior drug crime and was currently before the court on a 1326. And in fact, there are always going to be separate offenses in State and Federal court when we're talking about a 1326 offense, because State courts have no jurisdiction over that crime. And finally, also in contrast to Sanchez-Rodriguez, the court did not consider the arbitrary nature of the delay. And even through proceedings in this court, the government has not offered no justification for the delay. Thank you very much. Thank you, Mr. Leonard. We'll hear from the government. I'm relying on Mix in that regard. And this court stated in Mix that the first step is that district courts, however, must consult the guidelines and take them into account when sentencing, even though they now have the discretion to impose non-guideline sentences. It doesn't necessarily answer the question fully as far as is it really necessary, but that's the best we have at this point from this court. Second, I just wanted to ---- Even if we concluded, counsel, that even if we were to conclude, which we have not yet, although other courts have, that the guidelines are presumptively reasonable, don't we have to go something beyond the guidelines since we've got to ---- since the guidelines are now advisory? It's a starting point, but since we can depart from that, how can we do an equal protection comparison of things that are purely theoretical? I think I understand the concern. And what we have now to deal with as far as in the district courts is that's a necessary first step. It's as necessary a first step as it was pre-Booker, where the calculation had to be done. The court, the Ninth Circuit, has not ruled on the fact that within guidelines sentence is rebuttably reasonable. There's a rebuttable presumption of reasonableness. It's what we have at this point. It's a necessary first step. And, therefore, it's subject to the necessary similar attacks that were in place pre-Booker. So how would we conduct the equal protection analysis that exists in this case? Well, first going back to the initial argument in the brief, the defendant is not similarly situated to the defendant or the hypothetical defendant that they're comparing themselves to. There's no cases cited by the defendant, and there's no cases cited by the United States. That's correct. And what may be helpful in this regard is Plyler has language, and it's cited in both the United States as well as the defendant's brief. This is at 457 U.S. 202-216. The equal protection clause directs that all persons similarly circumstantial be treated alike. But so, too, the Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same. Here we have differences in fact. There is an illegal alien who has committed numerous crimes versus a person who is a citizen, at least for basis of comparison that the defendant offers before this court. So we think, at least the United States believes, that the equal protection analysis ends there. Nevertheless, if the court determines that these parties are similarly situated, accepting the defendant's argument, there's a rational basis. The rational basis, which was articulated in a somewhat similar circumstance in Adelaide out of the Eleventh Circuit, the Sentencing Commission may have concluded that an alien who has been convicted of a felony should be strongly deterred from reentering the United States, a consideration not present with respect to an American citizen. The higher punishment is rationally related to deter the illegal reentry of a person who has been deported after committing certain types of felonies. Deportation hasn't worked. They've returned back to the country, and that higher punishment is then rationally related to affect that policy. Unless the court has any further questions regarding the equal protection argument, I would like to go on to the sentencing aspect. With respect to sentencing, there's two steps. First, the procedural, which is the court must calculate the guidelines correctly. Second, the court must then apply the 3553A factors in arriving at a reasonable sentence. Now, this point was not raised in the brief, but we think the court can address this in the first instance, which is its jurisdiction to hear this appeal regarding the sentence. Booker did not impact the applicability of Section 3742A, which limited the court of appeals jurisdiction to hear sentences other than in certain circumstances. We believe here that because the sentence was not higher than the properly calculated guideline, this court does not have jurisdiction under 3742A to hear or decide upon the reasonableness of the sentence. Now, in full disclosure, this argument has been presented to other circuits and has been rejected almost uniformly. So if the court does feel that it has jurisdiction, then moving on to the second step, which is the court here applied the procedure appropriately, properly calculating the guidelines, applying the 3553A factor, and then rendering a reasonably calculated guideline range. The United States position is that if these two steps are conducted properly and the sentence is pronounced that is within the applicable guideline range, that this court need not look behind the reasoning. And in support of that … Counsel, can I take you back to your jurisdictional point? I'm sorry. Did you argue that we lack jurisdiction in your brief? No, Your Honor. That was not the … This is the new argument on appeal that we lack subject matter jurisdiction? Yes, Your Honor. The court did depart downward on the criminal history, right? Yes, Your Honor. If it departs downward to some degree, can we consider it or we still don't have jurisdiction? Well, Your Honor, the jurisdiction is in place as … The United States contends the jurisdiction is as it was before Booker to address the sentencing. In the cases for 3742A, was there an improper calculation of the guidelines? None of the parties here are contending that. The downward departure that the court effected in this case was not under a ground that was mandatory or … Sorry, I've confused myself, actually. The downward departure that this court wants to review, we don't think that it would necessarily have the jurisdiction other than what was allowed pre-Booker. Going back to the substantive aspect of the sentence and why it was reasonable, the court followed the proper procedures. And Mix, again, is telling in this regard. I'm going to quote from Star 5. Judges need not rehearse on the record all the considerations that Section 3553A lists. It is enough to calculate the range accurately and explain why, if the sentence lies outside it, this defendant deserves more or less. In this instance, the judge properly calculated the range, applied the 3553A factors, and sentenced the defendant to the low end of the guideline range. The United States does not believe that the court, this court, needs to go behind why the district court imposed that sentence. Well, assuming that we want to address the argument made by opposing counsel regarding the district court's denial of the request to depart downward further, what's your response to that? Well, I think the court's first question regarding the downward departure was, pre-Booker, appellate courts did not have jurisdiction to review a district court's denial of a discretionary downward departure. The United States believes that is still the existing case. And Estrada Plata, which is cited in the United States brief, directly addresses this point. A district court's discretionary refusal to downward depart is unreviewable on appeal. The United States believes that that remains the case. Opposing counsel says that that is not the case if there's a purported legal error. What's your response? Well, there was no legal error. The legal error that, as I understand it, the defense counsel is raising is that the court had the ability to downward depart if the court wanted to. That's not why the court did a downward depart here. The record, we believe, a fair reading of the record is, it doesn't seem to me that given the separate nature of the state offense that that should be a basis to depart. The court doesn't say that he couldn't depart. In fact, the whole sentencing hearing was conducted in the framework that Booker has come down. The judge was well aware that he had the discretion to depart if he wanted to. Within the guideline range, applying the guidelines, and outside after applying the 3553A, the court could have gone lower. The court chose not to. That discretionary denial of the downward departure under the guidelines the Unless the court has any further questions of me, I don't have anything further to add. Okay. I think that your time has just about expired. We will give you a minute, and we'd like to hear on the jurisdictional question if you've got something you'd like to add on that. I believe the jurisdictional question has been raised by the defense counsel to brief it.  You can't waive jurisdictional arguments. In that case, I'd like a chance to respond in writing. I have not reviewed any of the cases that the government is citing. I appreciate the government's candor in acknowledging that every other circuit has rejected the argument. I think we have a case pending, Plouffe, that's going to resolve this issue, so I'm not sure we need briefing. Perhaps I could submit a letter brief if I find anything relevant. Now, I'd like to address two points raised by the government. First, with respect to the last argument, Justice Siler asked regarding the court's departure on one ground, and therefore, is there any reason to look at the court's failure to depart on other grounds? I think both before and after Booker, as the government acknowledges, where there are multiple factors presented to the court as a basis for a lower sentence. Just because the judge reduces a sentence on one of those factors, that does not insulate the judge's decision with respect to the other factors from review where the judge's decision on the other factors was affected by legal error. Now, the government and I read the record differently. What the judge stated was the judge did not think that that was a basis to depart. My reading of that is that the judge, as with our pre-Booker authority, the judge felt that he lacked authority to go below the guidelines, and the only reason that he relied upon was that the two sentences were for different offenses. That's what you say is the legal error here. Yes, Your Honor. The judge felt that it could not be departed. Because the sole reason he gave was because they were for two different offenses. Now, the judge may decide to give the same sentence on remand, but the judge should have the opportunity to offer other factors beyond the only factor given, which is not a permissible factor under Sanchez-Rodriguez. Now, finally, going back to the equal protection issue, the government in its brief cited some language from Plyler and has again quoted Plyler for this court on the issue that being an undocumented alien is not a constitutional irrelevancy. However, it is constitutionally irrelevant in the context that we are talking about, which is whether a prior conviction for a crime of violence should be worth six points on the offense-level calculation or 16 points on the offense-level calculation. In Plyler, the reference to whether it's constitutionally relevant is raised only in the context of alienage classifications that relate to foreign policy, entry into the United States, and grant of citizenship. The government is essentially overlapping different powers of Congress to suggest that because Congress has powers with respect to foreign nationals in the immigration context, Congress should be able to sentence aliens more harshly in the criminal context simply for that reason. If Congress wants to impose higher sentences on defendants who re-enter the United States, those factors should be based on things that are related to the offense itself, for example, the number of times that a person has re-entered or the recency between the last deportation and the reentry. The harsher sentence should not and cannot be based on the identical factor that we see under another guideline where the enhancement is only awarded six levels as opposed to the 16 that we see under the 1326 guideline. Okay, thank you very much.
judges: Siler , Rawlinson, Bybee